D. Ben Holly, Plaintiff, v. E. M. Rolwing, Guardian and Curator of Henry S. Rolwing, a Person of Unsound Mind, Edward G. Rolwing, Jr., E. P. Melson, St. Francis Levee District of Missouri and The Little River Drainage District of Missouri, Defendants.

Edward G. Rolwing, Jr., Interpleader, Respondent, v. St. Francis Levee District of Missouri and The Little River Drainage District of Missouri, Interpleaders, Appellants.—87 S. W. (2d) 651.

Springfield Court of Appeals.    October 7, 1935.

Rehearing denied, November 27, 1935.

*R. P. Smith, Oliver & Oliver* and *Ward & Reeves* for appellants.

34

*A. Sloan Oliver, S. V. Medling* and *C. G. Shepard* for respondent.

SMITH, J.—This is a suit in the nature of a bill of interpleader. There is no controversy here over the pleadings. The facts upon which the case arises are set out in an agreed statement of facts, and may be briefly stated as follows:

Chas. G. Ross, as Collector of Revenue of Pemiscot County, filed a petition returnable to the March Term, 1932, of the circuit court of that county to enforce the collection of delinquent State and county taxes due and payable in the years 1928 and 1929 on 240 acres of land in Pemiscot County. The amount sued for was $800.91, together with penalties and costs of the suit.

For the purpose of this appeal it is conceded that all the parties joined as defendants in this interpleader action were made defendants in the tax suit and were duly served or entered their appearance.

Judgment was rendered in the tax suit on April 18, 1932, for the taxes sued for, together with costs of suit aggregating $864.98, to-

36

gether with collector's commission of 4 per cent thereof and an attorney's fee of $89.49, which judgment was declared a special lien and the "interest of" the levee and drainage districts "for assessments prior to and including the year 1929" were ordered to be foreclosed by the sale.

Thereafter a special execution was issued on said judgment, the land advertised and sold on December 29, 1932, to the highest bidder for the cash sum of $3,000.

After satisfying the judgment, including payment of all costs, penalties, commissions and tax attorney's fees, the sheriff had left in his hands the sum of $1,917.69. It is this sum to which the defendants in this proceeding are asserting title.

The plaintiff D. Ben Holly as Sheriff of Pemiscot County, Missouri, filed his bill of interpleader in the Circuit Court of Pemiscot County on January 14, 1933, alleging he had in his possession the net sum of $1,917.69, derived from the sale of certain lands sold by him under special execution based upon judgment for State and county taxes. He joined as defendants E. M. Rolwing, guardian and curator of the estate of Henry S. Rolwing, E. P. Melson, St. Francis Levee District of Missouri and The Little River Drainage District. . .

Since the institution of this action, it is agreed that Edward G. Rolwing, Jr., has acquired by purchase all right, title and interest of said Henry S. Rolwing and that he, E. G. Rolwing, Jr., is now entitled to any funds that Henry S. Rolwing's estate would have been entitled to, had he not conveyed his interest to Edward G. Rolwing, Jr.

E. P. Melson disclaimed any interest in and to the funds in question leaving only Edward G. Rolwing, Jr. who, for the purpose of this suit, may be treated as the owner of the land, and the Drainage and Levee Districts as the contending defendants in this interpleader action.

The case was subsequently transferred on change of venue to the Circuit Court of Butler County, Missouri, where judgment was rendered on April 24, 1934, directing the fund in question to be paid to Edward G. Rolwing, Jr., the owner of the land and denying the claims of the respective levee and drainage districts.

The respective districts jointly appeal from this judgment. There is no contention between the districts as to priority of their respective claims. They have agreed between themselves that they are entitled to share ratably in the surplus fund in proportion to the amount of their respective claims.

The lien of the St. Francis Levee District is based upon the following facts herein briefly stated, but more fully set forth in the agreed statement of facts.

The levee district was incorporated August 9, 1913, as a "Circuit

Court Levee District," by the Circuit Court of Pemiscot County, under the provisions of what now appears as Article VI, Chapter 64, R. S. Mo. 1929.

All the prescribed statutory steps necessary to complete the organization of the district, the appointment of commissioners, the assessment of benefits, the levy of the total tax, the issuing of bonds and the levy of the annual installments of the total tax for the years 1928 and 1929, are conceded to have been duly and properly complied with, and there is no question raised in this proceeding as to the regularity of the special improvement assessments levied by the District for the years mentioned.

The land involved is within the levee district and the annual special assessment or installment of the total tax levied by the levee district against the lands involved for the year 1928 was $116.64, and for the year 1929 was $116.64, which amounts, under the statute, bear interest from the date of delinquency at the rate of one per cent per month "from date of delinquency until paid." No part of said annual installment of special assessments has been paid to the levee district.

The drainage district was incorporated November 30, 1907, by the Circuit Court of Butler County, Missouri, as a "Circuit Court Drainage District" under the provisions of what now appears as Article 1, Chapter 64, R. S. Mo. 1929. It is conceded that all of the statutory steps necessary to be taken to complete the organization of the district, the appointment of commissioners, the assessment of benefits, the levy of the total tax and issuing of bonds, the levy of the several annual installments of the total tax have all been duly and properly complied with.

The land involved is also within The Little River Drainage District, and the annual installments or special assessments levied by the district against the land in question amounted in the year 1928 to $622.44, in the year 1929 to $622.44, and in the year 1930 to $316.94. The statute likewise provides that these special assessments should bear a penalty of one per cent per month "from date of delinquency until. paid" (Section 10762, R. S. Mo. 1929). No part of said special assessments were paid and the drainage district on August 1, 1931, instituted suit in the Circuit Court of Pemiscot County to enforce the collection of the special assessments delinquent for the years aforesaid. Judgment for the total sum of $1,889.70, including costs and attorneys' fees, was duly obtained on August 11, 1932, for the three years' delinquent special assessments.

A special execution was issued based on the district's judgment thus obtained, the land duly levied on and advertised for sale on November 25, 1932. However, on November 24, 1932, the Circuit Court of Pemiscot County sustained a motion filed by the State at

the relation of Chas. G. Ross, Collector, to quash the execution and delay the sale. The judgment obtained by the district still stands unpaid and unsatisfied.

On December 29, 1932, the land was sold under execution based on the judgment obtained in the State and county tax suit, instituted by Ross, collector, to enforce collection of the State and county taxes delinquent for the years 1928 and 1929.

The agreed statement of facts closes with the following paragraph:

"It is further stipulated by and between the parties hereto that the sole issue in this case is whether the surplus money derived from the sale of the land in question by the sheriff under execution for State and county taxes on December 29, 1932, should be paid to the owner of the land or his assigns or to the St. Francis Levee District and The Little River Drainage District. That there is no controversy as to priority of claims between said districts."

The issue is, therefore, clearcut. The question is, who is entitled to the surplus funds derived at the execution sale of the land to enforce collection of state and county taxes? Is the owner of the land or the districts within whose boundaries the land is located, entitled to the surplus? The land is delinquent in payment of special assessments duly levied and assessed against it. The contention of the appellee, Rolwing, is that he is entitled to the entire fund. The appellant districts contend they are entitled to the surplus ratably in the following amounts:

St. Francis Levee District ...........................$  199.95
The Little River Drainage District ................... 1,617.74

This computation, however, does not take into consideration any deduction of court costs, but does take into consideration a deduction of $100 allowed by the trial court to plaintiff as attorney fee for filing his bill of interpleader.

This case was appealed to the Supreme Court of this State. That court held that this court has jurisdiction. So the case is here.

The appellants have divided their brief into several heads, but really there is only one point before us for consideration, and that is, who, under the facts agreed on, is entitled to this surplus fund? The districts contend that the surplus should be considered as realty, and that their liens which they admittedly had upon the land, should be construed by the courts to be upon the surplus.

There is no question here as to the proper organization of the two districts, nor is there any contention but that the liens of the two districts were subject to and inferior to the lien for the State and county taxes.

The two districts exist solely by right of statute, and have no rights except as conferred by the statutes. Since their rights are statutory, and since the identical question before us, so far as drain-

age districts and levee districts are concerned, has not been directly passed on by the courts of our State, we must of necessity, largely look to the provisions of our statutes for our conclusions.

Section 10742, Revised Statutes Missouri 1929, Mo. Stat., Ann., page 3463, provides for organization of drainage districts. Section 10902, Mo. Stat., Ann., page 3592, provides for the organization of levee districts. There is no question here as to the legality of the organization of these two districts.

After drainage districts have been organized, under the provisions of section 10746, Mo. Stat., Ann., page 3473, a board of supervisors shall be selected, and "at such election each and every acre of land in the district shall represent one share, and each owner shall be entitled to one vote in person or by proxy for every acre of land owned by him in such district," and at this meeting five supervisors shall be elected. These supervisors shall determine by lot the terms of their office, which shall be one, two, three, four and five years respectively, and each year thereafter one supervisor shall be elected to serve five years. There are many duties placed upon this board. After all preliminary works have been done, then under the provisions of section 10758, Mo. Stat., Ann., page 3486, the board has full power and authority "to build, construct, excavate and complete all or any works and improvements which may be needed to carry out, maintain and protect the plan of reclamation," and to employ men and teams, engineers and buy necessary equipment and machinery for the work. Under the provisions of section 10759, Mo. Stat., Ann., page 3486, the board is given power to levy a tax upon the lands, railroad and other property in the district to which benefits have been assessed, necessary to pay the cost of the completion of the work and improvements. And under this section of the statute the tax is apportioned to and levied on each tract of land in proportion to the benefits assessed. Sections 10760 and 10761, provide for the levying and collection of the annual installments of taxes. Section 10764 provides that all taxes levied by the board of supervisors shall constitute a lien upon the land, "to which only the lien of the State for general State, county, school and road taxes shall be paramount."

Section 10765, Mo. Stat., Ann., page 3493 provides for suits for collection of these taxes and the enforcement of the liens by action on the delinquent tax bills. This section goes into detail as to how and where the suit may be brought, and provides for the sale of the land under this proceeding with the execution of a sheriff's deed therefor. This section specifically provides that "The title acquired through any sale of land or other property under the aforesaid proceedings shall be subject to the lien of all subsequent annual installments of drainage tax." This provision clearly shows that the sale

under such judgment does not effect the liens for levies for subsequent years. Our Supreme Court has held that under a sale of land for general taxes, the land is subject to the levy of future installments of drainage taxes. [McAnally v. Little River Drainage District, 28 S. W. (2d) 650.]

It seems to us that under section 10766, Revised Statutes 1929, Mo. Stat. Ann., page 3494, the legislature specifically and fully provided for protection of the rights of the drainage districts. This section is as follows:

"To protect said lien of said drainage taxes upon the lands and other property against which said taxes shall be levied, in any case where delinquent lands are offered for sale for such delinquent taxes, and the amount of the tax due, together with interest, cost, and penalties is not bid for the same, the board of supervisors shall have authority to bid or cause to be bid, not to exceed the whole amount due thereon, as aforesaid, in the name of the drainage district, and in case such bid is the highest bid, the sheriff shall sell and convey such lands to such drainage district, and such lands shall thereupon become the property of the drainage district, and may be held, disposed of, and conveyed by the board of supervisors at such price and on such terms, as in the discretion of the board of supervisors may be to the best interest of the district. If such lands, or other property, are sold by the board of supervisors the purchaser thereof shall take the same subject to all said drainage taxes thereafter becoming due, the same as all other lands and other property in the district. The board of supervisors shall also have authority to protect the lien of the drainage district for drainage taxes by paying the general, State, county, school and road taxes, and in case the lien of the State for such general, State, County, school and road taxes is foreclosed, and the land, or other property, sold for such general taxes, and the said drainage district is not made a party to the proceedings foreclosing the said lien for such general taxes, the said board of supervisors shall be authorized at any time within one year after said sale to redeem such lands, by paying not to exceed the whole amount of such taxes, together with penalties and costs accrued thereon. [Revised Statutes 1919, section 4400a; Added, Laws 1927, page 181.]"

There can be no question but that under this section the drainage district has a right to protect its interest by buying the land at its own foreclosure sale if its board of supervisors sees fit to do so. It is given power to take title to the land, to hold, dispose of and to convey at such price and on such terms, as in the discretion of the board may be to the best interest of the district. And this section provides that if the land is sold by the board the purchaser shall take the same subject to all drainage taxes thereafter becoming due.

Under this section the board of supervisors has authority to protect the district's lien by paying the general State, county, school and road taxes, and gives the district the right to redeem the lands sold for general taxes at any time within one year if the district was not made a party to the proceedings in the collection of general taxes. In other words this section of our statutes gives to the district every reasonable remedy to protect its interest, except to follow the surplus as contended for in this instance.

Since drainage districts are created by statute and governed solely by statutory provisions and since there are no provisions in the statutes authorizing any procedure to reach the surplus from sales under proceedings to collect general taxes, we are forced to conclude that the drainage district is precluded by the statutory provisions, and is authorized to act only as set out in the statutes. Since the district had its rights and remedies as fully set out in section 10766, supra, and stood by and did not protect its interest as specifically provided in the statutes, it thereby lost its claim for taxes for the particular years involved. This does not mean that the district has lost any other rights, or that the landowner may defraud the districts by letting his land be sold for general taxes and have it bought by a friend and afterwards returned to the original owner, as claimed by defendants here. The statutory provisions clearly answer that argument. The districts may have protected their interests by paying the general taxes, and thereby precluded any such fraudulent act on the part of the landowner as has been suggested here. It might under some circumstances be some burden on the part of the drainage or levee districts to use their funds for a while in paying the general taxes, but they were organized under such provisions of the statutes, and if the lands involved are not of such value to justify the district in paying the general taxes to protect the liens of the districts then under such condition there would be nothing lost to stand by and let the lands be sold for general taxes. But that condition was not true in this instance, and as a general rule it is not true. Certainly the lands in these districts are always worth more than the general taxes against them, and the district's rights and the rights of the bond holders may be protected if the board of supervisors will be vigilant in acting under the rights given by the statutes.

The appellants have cited several cases from the courts of this State which they contend justify their contention that the lien should follow and attach to the surplus. We have examined these authorities and we think they do not sustain the appellants in their contentions here, for they practically all have to do with liens contracted, such as second deeds of trust or second mortgages. Those instances are not controlled by strict statutory provisions as in this case.

What we have heretofore said applied largely to drainage districts

as organized under our statutes, but is applicable as well to levee districts. Under provisions of section 10926, Revised Statutes 1929, Mo. Stat., Ann., page 3612, the levee districts have a lien, to which only the lien of the State for general taxes shall be paramount. Section 10927 provides how the liens may be enforced. This section provides that actions for the enforcing of the liens and the collection of the taxes "Shall be instituted in the circuit court without regard to the amount of the claim within six months after December 31st of the year for which said taxes were levied."

As we read the statute with reference to collection of delinquent levee taxes we find no provision that would authorize such an action as herein brought that would establish a lien upon the surplus money left after a sale by the State for the collection of general taxes. Nor do we find any authority by the courts of this State that would authorize our so holding.

Since there is no provision in the statute giving the drainage or levee districts the right to follow the surplus derived from a sale under a procedure to collect general taxes, and since the statutes do give to drainage and levee districts sufficient methods of procedure to protect their interests, if followed, it is our conclusion that the finding of the trial court was proper, and that this judgment should be affirmed. It is so ordered. *Allen, P. J.*, and *Bailey, J.*, concur.