LITTLE RIVER DRAINAGE DISTRICT, Appellant, v. MARTHA ESTELLA SHEPPARD.

Court en Banc, June 21, 1928.

342

*Oliver & Oliver* for appellant.

*Wammack, Welborn & Cooper* and *Shane & Batton* for respondent.

WHITE, J.—The plaintiff brings this suit to collect delinquent drainage taxes assessed for the years 1921-1927, both inclusive. The petition is in seven counts, one for each year's assessment. The answer alleges as a complete defense that the land was sold under a judgment of the circuit court for delinquent general state and county taxes due for the years 1921 to 1924, inclusive. Defendant claims under that tax title. The facts appear in an agreed statement.

The trial court found for the defendant on counts one to four, inclusive, adjudging that the sale under the judgment for state and county taxes destroyed the plaintiff's lien for the years 1921-1924, the years for which the state and county taxes were levied and the property sold; found for the plaintiff on counts five, six and seven, and enforced the lien of the district for its assessments for the years 1925, 1926 and 1927, as superior to the tax title acquired under the general tax sale. Plaintiff appealed.

The claim of the respondent is that the State's lien for state and county taxes, the judgment for the same and the sale thereunder, cut out entirely the drainage district special assessment liens, whether those liens accrued *after* the state lien attached, at the same time, or before.

The trial court held that it cut out the liens of assessments levied during the same years that the lien for the state taxes accrued and became payable, but did not destroy the liens of the district for subsequent years.

346

1. The general rule is that the priority of general tax liens is in the reverse order of their accrual. That is, the latest tax lien is paramount to a prior tax lien. In Jaicks v. Oppenheimer, 264 Mo. 693, in an interesting discussion of the principle, it was held by the Court en Banc that the same principle applied to special tax liens; that those subsequent in time enjoyed a priority over those prior in time. Section 4400, Revised Statutes 1919, makes them so in this case, as will be noted below.

It is claimed by the plaintiff that such subsequent special tax liens are paramount to prior general state tax liens. We find it unnecessary to discuss that subject, because the liens of the district affected here include special tax liens contemporaneous with the general state liens, and the parties insist that we determine the relation of these liens to each other.

The statute relating to the State's lien for general taxes, Sections 12757 and 12758, provide for the continuance of the lien until paid, and that upon a sale under a judgment for such tax the sheriff shall execute a deed and convey title in fee simple to the purchaser.

Section 4399, relating to an action to enforce the drainage district taxes, provides that the tax and costs "shall from the date of filing the certificate hereinafter described in the office of the recorder of deeds for the county wherein the lands and properties are situate, until paid, constitute a lien, *to which only the lien of the State for the general state, county, school and road taxes shall be paramount,* upon all the lands and other property against which such taxes shall be levied as provided in this article."

The section then provides for a certificate by the president and secretary of the district, directed to the recorder of deeds, setting out the names of the owners of the land in the district, the descriptions of said land, the amount of taxes levied on each tract of land and that the "said tax shall be payable in annual installments; the amount of each installment as well as the amount of the maintenance tax will be determined and certified to the county collector of your county not later than the first day of September of each year."

There may be some uncertainty as to whether the liens of the district for the special assessments shall date from the filing of that general certificate or from the date of the annual certificates to the county collector on the first day of September of each year.

Section 4400 of the Drainage Law says the title acquired through any sale of land or other property under the aforesaid proceedings shall be subject to the lien of all subsequent annual installments of drainage taxes; thus making each installment a separate lien. The trial court so treated it.

The part of the section (4399) for construction is that which we have put in italics, that which provides for the lien of the special

taxes, "to which only the lien of the State for the general state, county, school and road taxes shall be paramount."

The lien for state and county tax shall be *paramount*. The statute does not say that it shall necessarily destroy the district lien for special taxes. The plaintiff district, according to the stipulation and the finding of the trial court, was not made a party to this proceeding. No person or corporation can be affected by a proceeding to which he or it is not made a party, and that applies to tax suits. For instance, the State's lien for taxes is superior to a prior mortgage lien, and a sale under such tax lien conveys title to the purchaser, but does not affect the mortgagee's right to redeem. [Gitchell v. Kreidler, 84 Mo. 472; Stafford v. Fizer, 82 Mo. 393; Watt v. Donnell, 80 Mo. 195.] Those old cases elucidate the doctrine and have been often referred to and approved in later cases. [Paxton v. Fix, 190 S. W. 328, l. c. 329; Real Estate & Loan Co. v. Gibson, 282 Mo. 75, l. c. 81; State ex rel. McKinney ·v. Davidson, 315 Mo. l. c. 554; Keaton v. Jorndt, 259 Mo. l. c. 194.]

Under these authorities, where the mortgagee, or *cestui que trust* in a deed of trust, is not made a party defendant in a suit to enforce the State's lien for taxes, a sale under a judgment obtained conveys the legal title, but does not cut out and destroy the mortgagee's interest. He still may redeem. In what way can it be said that the lien for special assessments in favor of the drainage district is not at least of equal dignity and does not carry the same rights as a mortgagee's lien?

This is a suit by the drainage district in its own right to enforce its lien; its right to sue in that manner is not questioned. The suit is to enforce the specific lien or several specific liens. By the statute they are made inferior, to the State's paramount lien for State taxes. But there is nothing in the statute, nothing in the general principles governing the situation of parties, which would warrant a conclusion that the lien of the district is destroyed by the proceeding to which it was not a party. It still has a right to redeem, or it may enforce its lien by judgment for each of the several years for which the assessments are made; at a sale under such judgment the purchaser would acquire the right to redeem in an action against the holder of the tax title, by paying the judgment, interest and costs of the tax proceeding. The purchaser at the tax sale holds such title subject to the right of the plaintiff to redeem. If the district had been made a party to the proceeding with an opportunity to meet and pay the general taxes at the time, a different question would be presented for consideration.

II. A question arises on the validity and good faith of the defendant's title. The land originally was in the name of defendant,

Martha Estella Sheppard. It came to her by inheritance. The stipulation contains this statement:

"(13) That E. E. Sheppard, while taking the title to said property in his name, in fact purchased the same with joint funds belonging to E. E. Sheppard and his wife, Martha Estella Sheppard, which he, in turn, paid to the sheriff at the time of the delivery of said sheriff's deed. That there was no change in the management of said land after E. E. Sheppard received his sheriff's deed; that he had always been active in the management of his wife's property, and continued to manage the property in the same manner that he had always previously done prior to acquiring his tax title."

If this had occurred before the enactment of the Married Women's Act of 1889, Sheppard, the purchaser, would have been in the position of a life tenant by reason of his curtesy initiate. [Wells v. Egger, 303 Mo. 1. c. 34.] And as a life tenant it would have been his duty to pay the taxes, but since the Married Women's Act his control of the property was as her agent. He always had been in active management of this property. Since the agreed statement shows no qualification of that management it means that she entrusted to him the entire management, including the payment of taxes. Under these circumstances he could not have acquired a tax title as against her. [2 C. J. 710; Witte v. Storm, 236 Mo. 1. c. 485.] An agent is prohibited from acquiring, to the prejudice of its principal, directly or indirectly, any interest in property which is the subject of its agency. That principle applies to this case only if E. E. Sheppard acquired the title without his wife's knowledge or consent. The amount that he paid in the sale for taxes including costs and attorney fees was $894.98. The land comprised 406 acres, and by the stipulation it was worth $21 an acre—more than eight thousand dollars. He got it for about ten per cent of its value. No doubt he could not hold such a title against his wife if she objected. He could do it only with her consent. With her consent it was a badge of fraud. [N. E. Loan & Trust Co. v. Browne, 177 Mo. 1. c. 425.] Either he acquired the title without her consent and could not possibly hold it against her, against her creditors, or this plaintiff; or, he and she collusively had Sheppard buy in the property and take the title in his own name for the purpose of defeating the district lien for taxes which he knew to be existing against the property, for he was made party to the tax suit. He could not lie still, purposely allow the general taxes to accrue against the property, allow it to be sold and purchased at ten per cent of its value and acquire a title which would cut out the lien of the district for taxes. It must be noted that the stipulation does not say that the purchase at the tax sale was made in good faith; only the naked facts were stated; that he was in the management of his wife's property and continued to

manage it after the sale as he managed it before. There was no change in the situation of the property after the sale. It continued exactly as it was before. Sheppard had died at the time of the suit and the defendant, Mrs. Sheppard, had acquired the title from him, apparently by descent.

The trial court is in better position to determine the good faith of that transaction than we are. If that court should find the sale and purchase for general taxes was for the purpose of defeating the special tax lien, then the general taxes were paid thereby. Otherwise the plaintiff's right to redeem is unimpaired, or it may have judgment enforcing its several liens, and the purchaser at a sale under such judgment may redeem.

The judgment is reversed and the cause remanded with directions to the trial court to proceed in accordance with this opinion. All concur.