JOHN A. MCANALLY, Appellant, v. LITTLE RIVER DRAINAGE DISTRICT and ELK CHUTE DRAINAGE DISTRICT.—28 S. W. (2d) 650.

Court en Banc, June 3, 1930.

*John A. McAnally* for appellant, *pro se.*

*Dearmont & Russell, Amici Curiae.*

*Ward & Reeves* and *Oliver & Oliver* for respondents.

GANTT, J.—Suit to quiet title. The case was submitted on motions of the parties for judgment on the pleadings. Judgment for the defendants, and plaintiff appealed.

Appellant purchased the land at a sale for state and county taxes for the year 1926. He claims under the sheriff's deed. The land is located in Dunklin County and in both the Little River and Elk Chute Drainage Districts. The Little River District was organized in 1907, and the Elk Chute District in 1922, both as circuit court drainage districts. Benefits were assessed against the land in suit and other lands. The assessments were confirmed by the circuit court. Thereafter, the Little River District levied a total tax of such portion of said benefits as deemed necessary to reclaim the land, plus ten per cent of said total amount for emergencies. The Elk Chute District did likewise. On these assessments of benefits and levy of the total tax, the districts issued bonds to provide funds. At the time of the trial the Little River District had bonds outstanding in the sum of $7,628,000 and the Elk Chute District had bonds outstanding in the sum of $468,500.

The annual levies of the Little River District were paid for the years 1913 to 1923, inclusive, but the annual levies for the years 1924, 1925 and 1926 were delinquent at the time of the trial. At that time the annual levies of said district for the years 1927 and 1928 were also delinquent and amounted to $1790.78, and at said time the total tax as estimated by the supervisors to be collected by annual levies from 1929 to 1944, both inclusive, amounted to $7,528.18. The delinquent taxes for the years 1927 and 1928, plus the estimated future taxes from 1929 to 1944, the maturity date of the bonds, amounts to $9,318.36. Appellant alleges said taxes in this amount constitute a cloud on his title.

Appellant also alleges that the annual levies of the Elk Chute District against the land in question for the years 1927 and 1928, with the total tax as estimated by the supervisors to be collected by annual levies, constitute a cloud on his title.

Since the ruling in Little River Drainage District v. Sheppard, 320 Mo. 341, 7 S. W. (2d) 1013, respondents concede they lost their lien for delinquent annual installments levied prior to the levy and subsequent sale of the land in question for state and county taxes for the year 1926.

The organization, assessment and levies of the districts are not challenged by appellant, and the regularity of the suit to collect the state and county taxes is not challenged by respondents. And there is no question as to priority of liens.

Appellant contends that the sheriff's deed conveyed the land to him free of the lien for future installments of the total tax.

Respondents state the question for determination as follows: "The sole question then presented is whether or not the sale of the land in question for state and county taxes destroys the lien of the districts for unlevied subsequent (future) installments of the estimated total tax."

The question involves the construction of sections of the statute authorizing the organization of drainage districts by circuit courts. Reference to sections will be understood to mean Revised Statutes 1919.

The financial foundation of the district is provided in Section 4394, which follows:

"After the list of lands, and other property, with the assessed benefits and the decree and judgment of court, have been filed in the office of the county recorder as provided in Section 4392 of this article, then the board of supervisors shall, without any unnecessary delay, levy a tax of such portion of said benefits on all lands, railroad and other property in the district to which benefits have been assessed, as may be found necessary by the board of supervisors to pay the costs of the completion of the proposed works and improvements as shown in said 'plan for reclamation' and in carrying out the objects of said district, and plus ten per cent of said total amount for emergencies. The said tax shall be apportioned to and levied on each tract of land or other property in said district in proportion to the benefits assessed and not in excess thereof, and in case bonds are issued as provided herein and hereafter, then the amount of the interest (as estimated by said board of supervisors) which will accrue on such bonds shall be included and added to the said tax, but the interest to accrue on account of the issuing of said bonds shall not be construed as a part of the costs of construction in determining whether or not the expenses and costs of making said improvements are or are not equal to or in excess of the benefits assessed. The secretary of the board of supervisors, as soon as said total tax is levied, shall, at the expense of the district, prepare a list of all taxes levied, in the form of a well bound book, which book shall be indorsed and named 'drainage tax record of . . . drainage district . . .' which indorsement shall also be printed or written at the top of each page in said book, and shall be signed and certified by the president and secretary of the board of supervisors, attested by the seal of the district, and the same shall thereafter become a permanent record in the office of said secretary."

In Elsberry Drainage District v. Winkelmeyer, 278 Mo. 268, 212 S. W. 893, we held the levy under this section was not self-enforcing and that it was only "a step necessarily precedent" to the levy and collection of the district taxes.

This levy rests on the engineers' estimate of the cost of reclaiming the land and is only an estimate of the taxes to be collected. If found to be insufficient, it may be increased within the amount assessed as benefits. [Sec. 4418.] It is made before the construction contracts are let, before bonds are issued and is only notice to the owners of land within the district and to all that said lands

are subject to taxation for purposes of the district. If the undertaking should collapse before an annual levy, no taxes may be collected.

In determining the question, the above section should be considered with Section 4395, which in part follows:

''The said board of supervisors shall each year thereafter determine, order and levy the amount of the annual installment of the total taxes levied under the preceding section, which shall become due and be collected during said year at the same time that state and county taxes are due and collected, which said annual installment and levy shall be evidenced and certified by the said board not later than September 1st of each year to the collector of revenue of each county in which lands and other property of said district are situated. . . .''

The lien of the State for taxes is established by an assessment of all land for that purpose. [Sec. 12757.] However, said lien does not accrue and become a fixed encumbrance until the amount of the tax is determined by an annual assessment of the land and an annual levy of the tax. Likewise, the lien of a drainage district annually accrues and becomes a fixed encumbrance at the time the board of supervisors ''determine, order and levy the amount of the annual installment of the total taxes levied under'' Section 4395. The intention of the Legislature could not have been otherwise, for, as argued by respondents, ''Can a lien exist until the amount of the charge has been determined? Can a charge be cancelled until it has been created? Can a sale of land in 1926 destroy a tax not to be determined and levied until in 1928? Can anything be destroyed prior to its creation? A landowner cannot pay the annual tax until after it has been determined, ordered and levied and certified to the collector. How can it be contended that it is a lien until the owner of the property charged had an opportunity to discharge the so-called lien?''

Answering this, appellant directs attention to Section 4399, which follows:

''All drainage taxes provided for in this article, together with all penalties for default in payment of the same, all costs in collecting the same, including a reasonable attorney's fee, to be fixed by the court and taxed as costs in the action brought to enforce payment, shall, from date of filing the certificate hereinafter described in the office of the recorder of deeds for the county wherein the lands and properties are situate, until paid, constitute a lien, to which only the lien of the State for general state, county, school and road taxes shall be paramount, upon all the lands and other property against which such taxes shall be levied as is provided in this article. Such lien shall be evidenced by a certificate substantially in the following form, to-wit:'' [Then follows the form of the certificate.]

Under this section when an annual installment tax (Sec. 4395) and an annual maintenance tax (Sec. 4419) are levied, the liens attach as of the date of filing the certificate of levy of the estimated total tax (Sec. 4394) in the office of the recorder of deeds. But the lien does not accrue until an annual levy is made. It follows that at the time appellant purchased the land, the owner held title free of, but subject to, the lien of future installments of the estimated total tax. Therefore, the sheriff's deed conveyed the land subject to the future attachment of said liens. In view of this conclusion, it isn't necessary to consider Section 2, Laws 1929, page 180, expressly saving the lien of the district in event of sale for state, county, school and road taxes.

The authorities cited by appellant and the *amici curiae* have been examined and considered. They rule different facts or construe statutes of other jurisdictions and do not touch the question here presented.

The judgment should be affirmed. It is so ordered. All concur.