THE LITTLE RIVER DRAINAGE DISTRICT, A PUBLIC CORPORATION, APPELLANT, v. R. IRL JONES, RESPONDENT.—136 S. W. (2d) 440.

Springfield Court of Appeals. December 26, 1939.

R. B. *Oliver, III* and *Oliver & Oliver* for appellant.

*Langdon R. Jones* for respondent.

TATLOW, P. J.—This suit involves the collection of drainage assessments or taxes in The Little River Drainage District (a Circuit Court District) for the years 1932, 1933, 1934 and 1935. At the time of its commencement the suit also involved taxes for the year 1931. The plaintiff dismissed the first count in its petition, relating to the 1931 taxes.

The case was submitted and tried upon an agreed statement of facts, together with supplemental admissions. At the close of the evidence the plaintiff requested a declaration of law that it was entitled to recover, on each remaining count of the petition, the amount of the taxes sued for therein. The defendant also requested a declaration of law that the finding and judgment should be for the defendant on each count. The court took the case under advisement and, at the October Term, and on the 21st day of November, 1938, rendered judgment for the defendant on counts II, III, IV and V. Within four days thereafter appellant filed its motion for a new trial, which motion was overruled and exceptions saved, and an appeal was granted to this court. One of the grounds assigned as error in the motion for a new trial, is:

"(1) That the judgment is against the evidence, is against the law, and is against the evidence under the law."

The Assignment of Errors is as follows:

·. ''1. The Court erred in holding that the lien of The Little River ·Drainage District for drainage assessments against the lands described in plaintiff's petition for the years 1932, 1933, 1934 and 1935 were ·extinguished and wiped out by reason of an execution sale on July 13, 1936, based on a judgment for state and county taxes rendered on September 18, 1931.

'' ''2. Trial court erred in not sending this case to the Supreme :Court.''

It is unnecessary to set forth the details, as shown in the agreed statement, with reference to the tax suit to collect the delinquent state, county, school and road taxes, the rendition of the judgment therefor, the issuance of execution, the execution sale, the purchase of the property by the respondent under the tax sale and the execution of the sheriff's deed to him. The purchaser had no interest in the property prior to his purchase at the tax sale. It is also unnecessary to set forth the details with reference to the instant suit to collect the drainage assessments or taxes for the years 1932, 1933, 1934 and 1935. It is sufficient to say that the regularity of these proceedings, in both instances, is shown by the agreed statement.

As now presented, the sole question is whether the liens of The Little River Drainage District for the benefit assessments for the years 1932, 1933, 1934 and 1935 were extinguished and completely destroyed by the execution sale, *on July, 1936,* which sale was made to the respondent under the tax suit for which a judgment was rendered for state, county, school and road taxes for the years 1927, 1928 and 1929. The tax suit was commenced on February 6, 1931, the judgment was rendered on September 18, 1931, and the sale under the judgment (at which sale the respondent purchased) was on July 13, 1936. The appellant concedes that the 1931 drainage assessment was extinguished, and, for this reason, voluntarily dismissed count I of its petition. The correctness of this concession is not now in the case.

The appellant sought to raise conditionally a constitutional question; that is, if the judgment of the Circuit Court should be affirmed, it would be the taking of its property without due process of law and in contravention of the Constitution of the United States and of the State of Missouri (the Fifth and Fourteenth Amendments to the Constitution of the United States, as well as Article II, Section 30 of the Constitution of Missouri, are relied on).

In our opinion, the determination of the question whether the drainage taxes for the years mentioned were extinguished by the tax judgment and sale, *clearly* does not present a constitutional question requiring the certification of the case to the Supreme Court.

Both parties have presented extensive briefs dealing with the question involved. It is conceded by both parties that the liens for state and county taxes are superior and have priority over the drainage assessments for the same years, and that a tax judgment for such taxes,

in which the district is made a party, extinguishes the drainage assessments for the corresponding years in which such assessments were made. The Missouri decisions clearly establish that the drainage assessments for the corresponding years are extinguished and destroyed. [Little River Drainage District v. Sheppard, 320 Mo. 341, 7 S. W. (2d) 1013.]

The difference between the parties in the instant case is, that the appellant contends that the tax judgment and sale only extinguished the drainage taxes for the year 1932 and subsequent years. (Why it concedes the extinguishment of the 1931 assessment is not very clear but is now immaterial.) On the other hand, the respondent contends that all such assessments made prior to the date of the sale (July 13, 1935) were extinguished by the sale.

It seems to us that the solution turns solely on the question of whether it is the date of the sale under the tax judgment or the date of the last tax lien merged in the tax judgment for state, county, school and road taxes for the year 1929. In this State the assessment for state and county taxes for 1929 was made on the 1st day of June, 1928. The levy under the assessment was made in 1929. Suit to enforce the tax lien for 1929 could not be brought until the taxes were delinquent for one year. Hence, the suit could have been brought on the 1929 taxes on the 1st day of January, 1931. It was, in fact, brought on the 6th day of February, 1931, and the judgment was actually rendered on the 18th day of September, 1931. The execution could have issued thereon, returnable to the October Term of the court, and a sale could have been had thereunder at said Term. If the execution had been so issued and the sale made at the October Term, 1931, and if the respondent had purchased the property at that time, we take it that it could not now be seriously contended that the drainage assessments thereafter levied in 1932, 1933, 1934 and 1935 would have been extinguished by the sale. The only possible theory upon which such a contention could be made is that the sale extinguished and destroyed, for all time, any subsequent drainage assessments, based on the total original assessment of benefits when the district was created. We do not understand the respondent to so contend.

Reduced to its last analysis, the respondent's contention must, of necessity, be that because the drainage district delayed procuring an execution and a sale thereunder until July 13, 1936, he obtained title to the property, free from all drainage assessments prior to the date of the sale. This gives to the sale made in 1936 an entirely different legal effect than it would have had if the sale had, in fact, been made, as it could have been, at the October Term, 1931. In our opinion, the respondent got exactly the same title, neither more nor less, that he would have gotten had the sale actually been made, as it could have been, in October, 1931; with the duty upon his part to pay all subsequent state, county, school and road taxes, as well as all subsequent

assessments and levies legally made against the property purchased by him. In our opinion, there is no possible escape from this inevitable conclusion unless it be that the sale extinguished and destroyed, for all future time, all drainage assessments and liens, based on the total benefit assessment, against the property so purchased by him. We find no case in Missouri sustaining such a conclusion. The Missouri cases cited by the parties, in our opinion, go no further than to establish the fact that the liens for state, county, school and road taxes are superior to the drainage assessments levied for the corresponding years, and that a sale under such tax suit for state, county, school and road purposes, where the drainage district is made a party, would give a stranger who purchased at the sale (as in the instant case) the title to the land, free and clear from the drainage assessments for the same tax years for which the judgment was rendered for such taxes.

In fact the decision of the Supreme Court, *en banc,* in the case of McAnally v. Little River Drainage District, 28 S. W. (2d) 650, relied upon by the respondent, would seem to be directly in point against the respondent's contention. It is a suit to quiet title. As said by the court, the facts were:

"Appellant purchased the land at a sale for state and county taxes for the year 1926. He claims under the sheriff's deed. . . .

"The annual levies of the Little River district were paid for the years 1913 to 1923, inclusive, but the annual levies for the years 1924, 1925 and 1926 were delinquent at the time of trial. At that time the annual levies of said district for the years 1927 and 1928 were also delinquent and amounted to $1,790.78, and at said time the total tax as estimated by the supervisors to be collected by annual levies from 1929 to 1944, both inclusive, amounted to $7,528.18. The delinquent taxes for the years 1927 and 1928, plus the estimated future taxes from 1929 to 1944, the maturity date of the bonds, amounts to $9,318.36. Appellant alleges said taxes in this amount constitute a cloud on his title.

"Appellant also alleges that the annual levies of the Elk Chute district against the land in question for the years 1927 and 1928 with the total tax as estimated by the supervisors to be collected by annual levies constitute a cloud on his title.

"Since the ruling in Little River Drainage District v. Sheppard, 320 Mo. 341, 7 S. W. (2d) 1013, respondents concede they lost their lien for delinquent annual installments levied prior to the levy and subsequent sale of the land in question for state and county taxes for the year 1926.

. . . . . .

"Appellant contends that the sheriff's deed conveyed the land to him free of the lien for future installments of the total tax.

"Respondents state the question for determination as follows: 'The

sole question then presented is whether or not the sale of the land in question for state and county taxes destroys the lien of the districts for unlevied subsequent (future) installments of the estimated total tax.' ''

The court quotes the statute relating to the levy of the levy of the assessments, and then says:

"In Elsberry Drainage District v. Winkelmeyer, 278 Mo. 268, 212 S. W. 893, we held the levy under this section was not self-enforcing and that it was only 'a step necessarily precedent' to the levy and collection of the district taxes.

"This levy rests on the engineers' estimate of the cost of reclaiming the land and is only an estimate of the taxes to be collected. . . .''

The court then quotes Section 4395, Revised Statutes 1919, and says:

"The lien of the state for taxes is established by an assessment of all land for that purpose. Section 12757. However, said lien does not accrue and become a fixed encumbrance until the amount of the tax is determined by an annual assessment of the land and annual levy of the tax. Likewise, the lien of a drainage district annually accrues and becomes a fixed incumbrance at the time the board of supervisors, 'determine, order and levy the amount of the annual installment of the total taxes levied under' section 4395. The intention of the Legislature could not have been otherwise, for, as argued by respondents: 'Can a lien exist until the amount of the charge has been determined? Can a charge be cancelled until it has been created? Can a sale of land in 1926 destroy a tax not to be determined and levied until in 1928? Can anything be destroyed prior to its creation? A landowner cannot pay the annual tax until after it has been determined, ordered and levied and certified to the Collector. How can it be contended that it is a lien until the owner of the property charged had an opportunity to discharge the so-called lien?' ''

The appellant in that case was seeking to have the court remove as a lien the delinquent drainage taxes for 1927 and 1928, plus the estimated future drainage taxes from 1929 to 1944. The trial court decided that it was not entitled to have the taxes removed as a cloud, and the Supreme Court, *en banc*, affirmed that decision. The drainage taxes for 1927 and 1928 stood upon an exact equality; for, if the 1927 taxes were extinguished and destroyed, and 1928 taxes were also extinguished and destroyed. The fact that, in discussing the case, the opinion refers to the 1928 taxes only, instead of to the 1927 and 1928 taxes, is evidently the basis for the concession by the appellant in the instant case, that the 1931 taxes were extinguished and destroyed. But, as before stated, the correctness of this concession is no longer involved in the instant case.

Appellant says that it is unfortunate that the opinion in that case does not disclose the date of the tax sale. The failure of the learned judge to refer to the date of the tax sale in that case, in our opinion, clearly shows that it was immaterial and did not, in any way, affect

the legal effect of the tax sale. The legal effect of the sale and the title which the purchaser acquired under the sale, is determined, not by the date of the sale, but by the date of the lien of the taxes merged in the tax judgment. The mere coincident that the district failed to take out an execution and procure a tax sale as soon after the judgment was rendered as it could do so, does not affect the question. So long as the judgment existed and continued in force, a sale under the judgment would convey exactly the same interest that it would have conveyed if the execution had issued and the sale been had as soon after the rendition of the judgment as the statutes would permit. There is, in our opinion, no intermediate ground for determining the question as to what drainage taxes are extinguished. The sale extinguishes either all future taxes, based on the total assessment of benefits, or only such drainage taxes as were levied contemporaneous with the state, county, school and road taxes upon which the judgment was rendered and under which the sale was had. This, it seems to us, is quite plainly stated in the case of the Liver River Drainage District v. Sheppard, 320 Mo. 341, l. c. 345, where the court said:

"The claim of the respondent is that the State's lien for state and county taxes, the judgment for the same and the sale thereunder, cut out entirely the drainage district special assessment liens, whether those liens accrued *after* the state lien attached, at the same time, or before.

"The trial court held that it cut out the liens of assessments levied during the same years that the lien for the state taxes accrued and became payable, but did not destroy the liens of the district for subsequent years."

The conclusion of the trial court was approved in that case, for the court says:

"Section 4400 of the Drainage Law says the title acquired through any sale of land or other property under the aforesaid proceedings shall be subject to the lien of all subsequent annual installments of drainage taxes; thus making each installment a separate lien. The trial court so treated it.

"The part of the section (4399) for construction is that which we have put in italics, that which provides for the lien of the special taxes, 'to which only the lien of the State for the general state, county, school and road taxes shall be paramount.'

"The lien for state and county tax shall be *paramount*. The statute does not say that it shall necessarily destroy the district lien for special taxes. . . ."

The court then proceeds to determine the right of the drainage district to redeem the property because it was not made a party to the case to collect the state, county, school and road taxes, and held that the district occupied a position analogous to that of an owner of a second mortgage where there had been a foreclosure under the first mortgage

without making the owner of the second mortgage a party, which left the owner of the second mortgage with the right to redeem from the sale under the first mortgage.

There is nothing in either of these cases, or any other Missouri case that has been cited by the respondent, to establish the principle that the delay in suing out an execution and procuring a sale on a judgment for state, county, school and road taxes, increases the interest which the purchaser under such a sale acquires, so that he acquires more than he would have if the issuance of the execution and the sale thereunder had not been delayed.

The tax judgment under which the sale was made was not a judgment *in personam* but was *in rem* or *quasi in rem* against the specific real estate on which the assessment and tax levy was made for each of the years merged in the judgment. It did not create a new lien but only enforced the lien which was created by the assessment and levy of the taxes for each of the years. Such a tax judgment has some analogy to a judgment or decree of a court foreclosing a mortgage. The analogy is by no means complete in every instance and there is a fundamental distinction between such judgments. A judgment foreclosing a mortgage, so far as the special lien is concerned, dates back to the execution of the mortgage. If it contains a deficiency judgment the deficiency judgment creates a general lien on other property that the debtor owned at the time the judgment was rendered even though acquired after the mortgage was executed. This is not true with reference to a judgment for state, county, school and road taxes.

The McAnally case, *supra,* cannot be distinguished from the instant case on the theory that the court, in that case, held that the suit to enforce the state, county, school and road taxes for 1926 did not extinguish or destroy the special assessments for 1927 or 1928 because, presumably, the sale under such judgment was made before 1928. Such a construction would disregard, overlook and run counter to the entire reasoning of that case, which is and was that the 1926 tax judgment either extinguished and destroyed the drainage assessments based upon the total benefits assessed at the time the district was created, or that it extinguished and destroyed *only* such annual assessments or levies to pay the benefits as had actually become a lien, not when the tax judgment was rendered or the sale had thereunder, but during the respective years sued for and upon which the judgment was rendered, and which tax liens were merged in such judgments. If the court had intended to make the *date* of the tax sale the controlling point to determine which benefit assessments were extinguished and which were not, it would undoubtedly have said so. To give the opinion the construction contended for by the respondent would be to assume that the court in that case entirely overlooked and forgot to mention the *controlling fact* upon which the opinion was based. This court is certainly not justified in assuming such om-

mission on the part of the court in that case, especially so when such assumption would destroy the entire reasoning of the opinion. In addition to this conclusion, there is no principle of law, of which we have any knowledge, that would justify us in treating the date the sale was made as the controlling date to determine, what title the purchaser acquired under the tax sale. To give the opinion such a construction would, in our opinion, be to disregard and ignore it, instead of following it, as we are required to do by our Constitution.

The judgment of the Circuit Court is reversed and remanded with directions to enter judgment on counts II, III, IV and V of the petition, for the aggregate amount of the taxes, interest and penalties due on said lands for the respective years, together with the costs of this suit, including a reasonable attorney's fee; that the same be declared a first and paramount lien in favor of The Little River Drainage District; that the equities of redemption be foreclosed; that said lien be enforced and the said real estate, or so much thereof as shall be necessary to satisfy the judgment, interest, penalties and costs, be sold; and that a special *fieri facias* be issued thereon to be paid on the compromise basis made possible by the loan obtained by the district from the Reconstruction Finance Corporation, as provided in the stipulation filed in this case. *Smith* and *Fulbright, JJ.*, concur.

### On Motion for Rehearing.

TATLOW, P. J.—The respondent has filed a motion for a rehearing and also a motion to transfer the case to the Supreme Court for the reason that the case involves and turns upon the construction of the revenue laws of this state.

Before considering the motion, we desire to modify the original opinion by striking out an inaccurate statement, as follows:

"The difference between the parties in the instant case is, that the appellant contends that the tax judgment and sale only extinguished the drainage taxes for the year 1932 and subsequent years" (p. 3 of opinion, last paragraph, first sentence), and substituting therefor:

"The difference between the parties in the instant case is that the appellant contends that the tax judgment and sale did not extinguish the drainage taxes for the year 1932, and subsequent years."

The opinion also says, on page 3: "(Why it concedes the extinguishment of the 1931 assessment is not very clear but is now immaterial)." This should be omitted.

The opinion should further be modified by striking out, on page 7, the following:

". . . The fact that, in discussing the case, the opinion refers to the 1928 taxes only, instead of to the 1927 and 1928 taxes, is evidently the basis for the concession by the appellant in the instant case, that the 1931 taxes were extinguished and destroyed. But, as

before stated, the correctness of this concession is no longer involved in the instant case," for the reason that we are informed by respondent's brief, pages 5 and 6 (which we overlooked), that the assessment for the year 1931 was dismissed from the present suit because the drainage taxes for that year had been included in another suit (No. 17081).

Respondent's contention that this case involves "a construction of the Revenue Laws of the State of Missouri," is raised for the first time in his motion for a rehearing and to transfer the case to the Supreme Court. As it goes to the jurisdiction of the court, the question could no doubt be raised at any time but for the well established rule in this State that, in order to confer jurisdiction of a constitutional question on the Supreme Court, it must be raised at the first opportunity, and perhaps, by analogy, this question should have been raised at the first opportunity. If so, it is raised too late in the instant case. We do not, however, place our ruling on the ground that this question was raised too late.

We have carefully considered the matter and have arrived at the conclusion that this case does not involve the construction of the revenue laws of this State within the meaning of Section 12 of Article 6 of the Constitution of Missouri. The respondent does not contend that it does so involve the revenue laws of the State because the purpose of the suit is to obtain judgment for delinquent drainage assessment taxes, but concedes that our Supreme Court has held that drainage taxes are not within the meaning of the constitutional provision *supra*, and, hence, the drainage cases holding that this court, and not the Supreme Court, had jurisdiction where the amount sued for or recovered was less than $7500, do not apply.

The second ground alleged in the motion to transfer, contains the following:

". . . that this Court has overlooked decisive questions in the case, and which were duly submitted by Counsel for Respondent as follows: That this Court overlooks entirely and does not pass (on) nor give any construction to Sections 9947, 9937, 9956, 9958, 10764, 10760 and 10766 of the Revised Statutes of the State of Missouri, and all of which express statutory provisions were called to the attention of this Court in Respondent's Brief beginning at page 17 thereof."

The above quotation is sufficient to indicate clearly the basis for the respondent's contention that this case involves the revenue laws of the State. In a very broad and general sense this is no doubt true. The judgment under which the respondent acquired title to the property is based on the laws of the State relating to the general revenue. It will be observed, however, that such fact is not of itself sufficient to confer jurisdiction on the Supreme Court.

But, in addition thereto, it must be one of those cases "involving the construction of the revenue laws of this State." Although the revenue laws there involved were the basis for the judgment under

which the respondent acquired title, the case is not brought within the constitutional provision unless it involves the construction of such laws.

It has been held that, in order to give the Supreme Court jurisdiction of a constitutional question, under this constitutional provision, it must appear that a constitutional question was essential to the determination of the case. [Miller v. Connor, 250 Mo. 677, 157 S. W. 91; Rollins v. Assn., 213 S. W. 52; State v. Goad, 296 Mo. 452, 246 S. W. 52.]

For the same reason, in order to give the Supreme Court jurisdiction of a revenue case, it must appear that the construction of the revenue laws was essential to the determination of the case. It is not sufficient to confer jurisdiction on the Supreme Court to merely cite a constitutional provision. Neither is it sufficient to merely cite a statute relating to the general revenues. The revenue statutes cited by the respondent are perfectly plain and unambiguous and are in no way decisive of the question dealt with in the opinion of this court. No provision of the revenue statute is cited or pointed out which it is claimed is decisive of the case. It is clearly not necessary to construe either of said statutes in order to decide the case. Where the statute is perfectly plain and unambiguous there is nothing to construe. All that is necessary in such a case is to read it.

The sole and only question involved in the instant case is whether the drainage taxes for the year 1932 and subsequent years, which became liens prior to the date of the sale in July, 1936, were extinguished by the sale, or whether only the assessments for the corresponding years for which the judgment was rendered for general taxes were destroyed. The solution of this question involves only a general question of law and not a construction of the revenue statutes. In addition to this we think, as the original opinion holds, that it has been directly decided by our Supreme Court in the case of McAnally v. Little River Drainage Dist., 28 S. W. (2d) 650. If so the construction of the revenue laws is no longer involved for it has also been decided by our Supreme Court that a plea of the unconstitutionality of the statute will not confer jurisdiction where the Supreme Court has already held the statute valid. [Dickey v. Holmes, 208 Mo. 664, 106 S. W. 511, and subsequent cases.] On exactly the same principle, if, as the original opinion holds, the Supreme Court has directly decided the question, jurisdiction cannot be conferred on the Supreme Court by again raising it in this court as a ground to transfer the case to the Supreme Court.

If the respondent's contention—that this case involves a construction of the revenue laws of this State—is well taken, our opinion can be quashed by applying for a writ of *certiorari*, and if and when it is quashed for such reason, we would be compelled to transfer the case to the Supreme Court. If we have misconstrued the McAnally case, as

the respondent contends, the opinion can be quashed on a writ of *certiorari* and, if quashed for that reason, we would, of course, be compelled to render an opinion disposing of the case in accordance with the Supreme Court's opinion.

After carefully considering the matter we think the motion for a rehearing and the motion to transfer the case to the Supreme Court, should be and are denied. *Smith* and *Fulbright, JJ.,* concur.