Mary Elnora WINFREY and Lulla S. Winfrey, Appellants,

v.

Wilma E. TRENCHARD, Respondent.

No. 22523.

Kansas City Court of Appeals.

Missouri.

Nov. 4, 1957.

Rufus Burrus, Independence, for appellants.

Charles T. Given, S. Cedric Siegfried and Siegfried & Smith, Independence, for respondent.

MAUGHMER, Commissioner.

In their petition, plaintiffs, who are now appellants, alleged that on May 13, 1947, the defendant-respondent, by warranty deed, conveyed to them a farm of 166 acres; that after delivery of the deed and payment of the consideration, plaintiffs learned that said lands "were encumbered with special taxes by reason of a certain drainage district proceedings and at the time of said deed, the total amount of said taxes due was $3,523.20", for which amount judgment was sought, together with interest thereon at six percent from the date of the sale in May, 1947, on the theory that the premises were "not free and clear of encumbrance" as warranted by the deed. Defendant's amended answer and petition to reform deed, was in three counts. Firstly, she admitted the sale, execution and delivery of the deed, denied all other allegations and prayed for judgment on the pleadings. Secondly, she asserted that at the time of the transfer "there were no assessments or taxes accrued, due, payable, assessed or levied upon the lands in question"; that plaintiffs well knew that the lands were in Levee District No. 5, Ray County, Missouri and subject to future tax levies and assessments thereunder. Thirdly, that the war-

ranty deed was the outgrowth of a real estate sales contract which the parties or their agents executed more than thirty days before, which specifically provided that in the prospective warranty deed "taxes, general and special, payable after April 10, 1947", were excepted, and prayed for reformation of the warranty deed in conformity therewith.

This case was tried to the court. The court dismissed plaintiffs' petition and dismissed defendant's petition for reformation of the deed. Plaintiffs' timely motion for new trial was filed, overruled, and this appeal was lodged. The trial court having denied defendant's prayer to reform the deed and that part of the judgment not having been appealed, it has become final. We, therefore, review only the action of the trial court in dismissing plaintiffs' petition and proceed first to a synopsis of the facts as presented by the evidence. The facts respecting the vital and determinative issues are not really disputed. The controversy centers chiefly around the legal results which flow from such a state of facts.

On May 13, 1947, the defendant Wilma E. Trenchard, a single person, was the owner of and by warranty deed conveyed to plaintiffs a farm of some 166 acres lying in Ray County, Missouri. Therein she covenanted "that the said premises are free and clear of any encumbrance done or suffered by her or those under whom she claims; and that she will warrant and defend the title to the said premises unto the said parties of the second part and unto their heirs and assigns forever, against the lawful claims and demands of all persons whomsoever". In March, 1945, Levee District No. 5, Ray County, Missouri, was organized under the provisions of Chapter 79, R.S.Mo. 1939 (Now Chapter 245, R.S.Mo.1949, V.A. M.S.), this being a Levee District organized by the county court. The District included the 166 acre farm involved herein which was at that time owned by defendant. As provided and contemplated in such matters, estimates as to total construction costs were made. The District Board of Directors

then prepared and certified to the recorder of deeds a compilation of the benefits, principal tax, interest on bonds and total tax authorized and levied with respect to each tract in the district. In the levee tax record as certified to the recorder of deeds, photostatic copy of which was offered and received in evidence, defendant's farm was described in six separate tracts. In the aggregate for all six tracts, the total benefits were determined to be $3,330, and the total tax $2,725.62.

Section 245.475, V.A.M.S. reads: "If it shall be decided to do the said work, it shall be competent for the directors to order the rate per cent agreed upon for the cost of said work, to be paid in annual installments, in such amounts as may be convenient for the accomplishment of said work; otherwise the whole amount of said assessment of the rate per cent shall be payable immediately upon the approval by the landowner of the agreed amount of rate per cent, and shall be a lien upon the lands assessed within the district until paid, and shall bear interest at the rate of not to exceed eight per cent per annum until paid, and such interest may be collected and enforced as part of the assessment or annual installment; said assessment or annual installment shall be levied and collected in the same manner as provided in section 245.445. (R.S. 1939, § 12565)".

It appears that under the authorization of the statute just quoted, the District Board of Directors determined that the tax should be paid in annual installments, rather than immediately and in one sum. In any case, in the levee tax record, as filed with the recorder of deeds, signed by the president of the Levee District and certified to by the secretary, it was declared: "The said tax shall be payable in annual installments; *the amount of each installment,* as well as the amount of maintenance tax, *will be determined* and certified to the county clerk of this county not later than the first day of June of each year. The aforesaid tax and such maintenance taxes as may be levied from time to time are hereby

declared a lien to which only the lien of the state for general, state, county, school and road taxes shall be paramount upon all land and all other property herein and heretofore described". (Italics ours.)

During the trial below defendant conceded that her land was in the District, that the Levee District was validly organized and that the estimate of benefits was duly made.

The defendant paid the annual installments which the Board declared payable prior to the year 1947, but none thereafter. Tax receipts received as exhibits indicate that the plaintiff Mary E. Winfrey paid the four annual installments of $233.-12 each, which were declared payable for the years 1948 to 1951, inclusive. Plaintiffs then sold the farm to one Glenn Lentz. Again tax receipts received as exhibits indicate that Mr. Lentz had at the time of the trial paid four annual installments in the sum of $199.80 each for the years 1952 to 1955. It will be noted that the last four annual installments were in lesser amounts than such annual levies had theretofore been.

By their pleading, during the trial and on appeal, plaintiffs contended that the total benefits assessed ($3330) against this farm in April, 1945, were, at that time, legal special taxes amounting to an encumbrance, were due and payable, and that defendant's failure to clear the real estate of this liability constituted a breach of the warranties in the deed. In support of their position that the total benefits or at least the total improvement tax was due and payable in toto when first certified by the Levee Board, plaintiffs offered and there was received in evidence a minute entry of that Board dated June 13, 1947, reading as follows: "The president of the Board then stated that George Letzig had paid the balance of his improvement tax in full and that his land should not be taxed for improvements or on bonds outstanding, and it was moved by Calvert that all of his said lands located within the District be ex-empted from such taxes. This motion was seconded and on roll call vote the said motion carried unanimously".

The legal question, the answer to which will determine this appeal, now becomes clear. If the benefits assessed, or for that matter, if the total tax assessed against the farm (which was the utmost burden that could be laid upon it by the Levee Board, by several annual installments or through one grand assessment, without further authorization from a majority of the members of the District) legally amounted to a special tax, definite as to amount, if the same was then due and payable and constituted an encumbrance, then the result was a breach of warranty, plaintiffs should recover and the judgment below should be reversed. On the other hand, if only the annual installments levied and fixed by the Board prior to the date of the warranty were the only Levee District special taxes then due and payable, the only ones definitely then ascertainable as to amounts, the only ones which had at that time attached as a lien upon the farm to such an extent as to amount to an encumbrance, then there was no breach of warranty and the judgment below should be approved.

Section 245.475, V.A.M.S. set out in full, supra, clearly authorizes the Levee Board to collect the full tax during the first year and if not so paid, the same to draw interest not exceeding 8 percent, or to lighten the immediate burden by levying and collecting annual installments. Here, the Board chose the latter course. No interest was charged if the installments were paid during the year assessed. It was not certain in 1945 when the district was formed, or in 1947, when the deed passed, just what amount of the total tax would finally be assessed and levied. The Board annually levied a maintenance tax, the amount of which depended upon nature's weather whims and the Levee's need. If construction and organization costs proved to be less than the original estimate, the outside limit of authorized taxes might never be collected. The Board could accomplish this

reduction by either passing an annual installment or by reducing the amount of some annual installments. For each of the years until 1952, there was assessed and levied against this farm a levee tax of $233.12. From 1952 to 1955, inclusive, the total annual installment or tax was $199.80.

It seems clear that the special assessments which constituted a presently enforceable lien on the land at the time of conveyance are within the purview of a covenant against encumbrances.

We do not believe that even if it was established that plaintiffs knew the land was in the Levee District and subject to taxes, that this fact alone is sufficient to justify the legal conclusion that plaintiffs, as grantees, thereby assumed and agreed to pay outstanding levee taxes which they would not have been otherwise obligated to pay.

In 21 C.J.S. Covenants § 106, page 961, we find this statement: "The covenant against encumbrances implied from the word 'grant' is not breached by outstanding taxes which were a lien on the land at the time of its conveyance but not payable until afterward, unless the grantor was under personal obligation to discharge the lien". And continuing on page 962: "Unless otherwise provided by statute, and subject to statutory regulations as to the time when the lien attaches, and subject also to the general rule that local assessments are not included in a covenant against taxes, valid special assessments which constitute a lien on land at the time of its conveyance are within the meaning of a covenant against encumbrances. * * * The circumstances under which a tax or special assessment lien attaches, so as to render a grantor liable on his covenant against encumbrances, are to be determined in accordance with the controlling statutory provisions, and while, as a general rule, the lien must have attached prior to the time of the conveyance, see supra and infra this section, it has been held that it need not be actionable at the time of the conveyance. Other authority holds that, in the absence of contrary statute, the lien attaches when the amount of taxes is definitely fixed, and liability for its payment commences".

As authority for the last quoted sentence, the footnote cites a Missouri case, namely, Bean v. Munger Land Co., Mo. App., 265 S.W. 844. This is one of the two cases cited in plaintiffs' brief. In this case city lots were sold and at the time special assessments for street improvements were outstanding and unpaid. The special taxes were definite as to amount and could be paid at once, or in annual installments with interest added, at the option of the owner. In this case it was ruled there had been a breach of warranty. On page 847, the court stated the general rule in these words: "In the absence of a statute the general rule seems to be that the lien attaches as soon as the amount of taxes is definitely fixed, and liability for its payment commences".

The opinion in McAnally v. Little River Drainage District, 325 Mo. 348, 28 S.W.2d 650, 651, is by our Supreme Court en banc. In that case the issues were similar to ours, although plaintiff there had purchased at a sale for unpaid state and county taxes. Because of its high authority and because the remarks are so pertinent, we quote extensively from the McAnally opinion: "The lien of the state for taxes is established by an assessement of all land for that purpose. Section 12757 [V.A.M.S. § 137.085]. However, said lien does not accrue and become a fixed encumbrance until the amount of the tax is determined by an annual assessment of the land and annual levy of the tax. Likewise, the lien of a drainage district annually accrues and becomes a fixed incumbrance at the time the board of supervisors 'determine, order and levy the amount of the annual installment of the total taxes levied under' section 4395 [V.A.M.S. § 242.460]. The intention of the Legislature could not have been otherwise, for, as argued by respondents: 'Can a lien exist until the amount of the charge

has been determined? Can a charge be cancelled until it has been created? Can a sale of land in 1926 destroy a tax not to be determined and levied until in 1928? Can anything be destroyed prior to its creation? * * *' Answering this, appellant directs attention to section 4399 [V.A. M.S. § 242.590], which follows: 'All drainage taxes provided for in this article, together with all penalties for default in payment of the same, all costs in collecting the same, including a reasonable attorney's fee, to be fixed by the court and taxed as costs in the action brought to enforce payment, shall, from date of filing the certificate hereinafter described in the office of the recorder of deeds for the county wherein the lands and properties are situate, until paid, constitute a lien, to which only the lien of the state for general state, county, school and road taxes shall be paramount, upon all the lands and other property against which such taxes shall be levied as is provided in this article. Such lien shall be evidenced by a certificate substantially in the following form, to wit:' (Then follows the form of the certificate.) Under this section when an annual installment tax (section 4395 [V.A.M.S. § 242.460]) and an annual maintenance tax (section 4419 [V.A.M.S. § 242.490]) are levied, the liens attach as of the date of filing the certificate of levy of the estimated total tax (section 4394 [V.A.M.S. § 242.450]) in the office of the recorder of deeds. But the lien does not accrue until an annual levy is made. *It follows that at the time appellant purchased the land, the owner held title free of, but subject to, the lien of future installments of the estimated total tax".* (Italics ours.) The statutes referred to in this opinion are identical in substance with those in effect in 1945 and today.

The McAnally case has been approved by Holly v. Rolwing, 230 Mo.App. 33, 87 S.W.2d 651, and by Drainage Dist. No. 23 v. Hetlage, 231 Mo.App. 355, 102 S.W. 2d 702. In State ex rel. Martin v. Childress, 345 Mo. 495, 134 S.W.2d 136, loc.cit. 139,

the Supreme Court of Missouri ruled: "The state's lien for taxes 'does not accrue and become a fixed encumbrance until the amount of the tax is determined by an annual assessment of the land and annual levy of the tax' ".

In *Little River Drainage Dist. v. Jones,* 234 Mo.App. 816, 136 S.W.2d 440, it was held that under a tax sale for state and county taxes only the annual drainage district installments assessed prior to the order of sale were extinguished.

School districts and road districts incur obligations. Cities vote bonds for water, parks and other special improvements. Levee District No. 5 sold bonds to provide immediate funds for the construction of the levee. Special improvement bonds are not marketable unless the taxing authority is authorized and in most instances required to levy future taxes for payment of carrying charges and final amortization of the loan. Must a seller of real estate, in a school district, or city, or levee district, anticipate and pay all special improvement taxes that are authorized to be levied against him *in futuro,* else be held to have breached his covenant against encumbrance if he sells his property by warranty deed? We believe not.

It is true that one property owner in this Levee District, Mr. Letzig, in 1947, two years after the district was formed, went before the Board and settled his entire liability. He did not, however, pay this tax to the collector. He could not have paid it to the collector. He settled directly with the Board and the Board settled with him through the medium of a Board resolution rather than by having him pay through the regular tax collector, as such taxes are normally paid. The Board of Levee District No. 5 elected not to levy and collect the taxes in one year, but to follow the second alternative, namely, to collect by annual installments. Even a foreclosure sale for unpaid state and county taxes, which would certainly wipe out then existing tax encumbrances, has been specifically ruled

not to destroy a Levee Board's right and power to levy future annual installments. (Little River Drainage Dist. v. Jones, supra). We believe, under the authorities reviewed herein, that only those annual installments which had been determined, ordered, levied and were fixed in amount, prior to the execution and delivery of the warranty· deed were valid liens and encumbrances against the farm, and since all such had been paid at the time of the conveyance, it follows that there were no outstanding liens or encumbrances existing at the time title was passed by defendant to plaintiffs. Therefore, the judgment of the trial court dismissing plaintiff's petition should be and is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.