## ELSBERRY DRAINAGE DISTRICT, Appellant, v. CHRISTOPHER WINKELMEYER et al.

### Division One, June 2, 1919.

1. **DRAINAGE DISTRICT: Uniform Tax.** Where the board of supervisors of a drainage district organized under the provisions of the Circuit Court Drainage District Act of 1913, as soon as elected and qualified, in September levied the uniform acreage tax authorized by Section 11 of said act and certified it to the County Collector, the tax was due and payable as soon as assessed, and became delinquent on December 31st of the same year, and there being no defect in the petition in a suit for this tax, a judgment for defendant on his demurrer thereto is wrong.

2. ———: **Installment Tax.** Where a board of supervisors of a drainage district organized under the Circuit Court Drainage District Act of 1913, after the decree rendered on September 2, 1914, confirming the report of the commissioners appointed to assess benefits and damages, on September 30, 1914, made the general levy thought to be necessary for the completion of the work, the annual installment tax subsequently levied and certified to the County Collector on November 5, 1914, did not become delinquent on December 31, 1914, nor can it be enforced as a tax for that year, for the board had no power, under the statutes, to impose an installment tax for the year 1914, but could only do so "each year thereafter."

3. ———: ———: **Each Year Thereafter: Definition.** The words "each year thereafter" used in Section 19 of the Circuit Court Drainage District Act of 1913, Laws 1913, p. 243, cannot be construed to mean "thereafter each year," without doing violence to their context and the meaning and intent of the prior statutes out of which said Section 19 was evolved. By construing the words in their plain, ordinary and usual sense, as the statute, Section 8057, Revised Statutes 1909, requires, and by reading Section 19 in connection with other sections of the act, it is clear that the board of supervisors of a drainage district, where the decree confirming the report of the commissioners appointed to assess benefits and damages is rendered in September, has no power to levy an installment tax for the same year.

Appeal from Lincoln Circuit Court.—*Hon. E. B. Woolfolk,* Judge.

REVERSED AND REMANDED.

Drainage District v. Winkelmeyer.

*O. H. Avery* and *Wm. A. Dudley* for appellant.

(1) The tax book was properly filed later than the first day of September, 1914, the statute fixing the time being merely directory and the landowners not being prejudiced by the delay. Westport v. McGee, 128 Mo. 152; State ex rel. v. Railroad Co., 113 Mo. 298; State ex rel. v. Wilson, 216 Mo. 287; 2 Page on Taxation by Assessment, sec. 1132; 1 Cooley on Taxation, p. 480, and note; State v. West Duluth Land Co., 75 Minn. 456; Bushwell v. Board of Supervisors, 116 Cal. 351; Taylor v. McFadden, 84 Iowa, 262; Sharp v. Engle, 2 Okla. 624; Walker v. Edwards, 197 Pa. St. 645; School Dist. v. Cumberland, 21 R. I. 576; Boody v. Watson, 64 N. H. 162; Anderson v. Mayfield, 93 Ky. 230; Pond v. Negus, 3 Mass. 230. (2) The court erred in sustaining the demurrer as to the second count of plaintiff's petition. Laws 1913, sec. 11, p. 238.

*Creech & Penn* and *Sutton & Huston* for respondents.

(1) The board of supervisors had no authority to levy an installment tax for the year 1914, against the benefits assessed to the lands of respondent. Sec. 18, Laws 1913, p. 242; Sec. 19, Laws 1913, p. 243; Pacific Railroad v. Watson, 61 Mo. 57. (2) When the Legislature confers on a tribunal power to levy taxes, such power must be exercised in strict conformity to the act conferring such power. City of Kansas v. Railroad, 81 Mo. 293; Noll v. Morgan, 82 Mo. App. 119; State ex rel. v. Railroad, 149 Mo. 644; St. Louis & S. F. Ry. Co. v. Apperson, 97 Mo. 306. (3) The second count of the petition was not called to the court's attention at the time the demurrer was argued by counsel and sustained by the court and appellant did not ask for judgment on said second count.

BLAIR, P. J.—This is an appeal from a judgment on demurrer to the petition in a suit begun to

collect drainage taxes. The petition contained two counts: one for a tax imposed to pay organization and preliminary expenses (Sec. 11, p. 238, Laws 1913), and one to recover an annual installment tax (Sec. 19, p. 243, Laws 1913) levied by the board of supervisors in the fall of 1914.

I. The board of supervisors, as soon as elected and qualified, on September 13, 1914, levied the tax under Section 11 and certified it to the collector. This tax was "due and payable as soon as assessed" and, not being paid, became delinquent "by Decem-

**Uniform Tax.** ber thirty-first of the year in which" it was levied, to-wit, 1914. We discover no defect in the count based on this assessment, and respondent does not contend there is any. He asserts this count was overlooked. The record shows simply that the demurrer was sustained to the petition. The judgment on this count is wrong and cannot stand. The tax became due and collectible in 1914 by plain provision of the statute.

II. The count for the annual installment presents a different question. The decree confirming the amended report of the commissioners was rendered September 2, 1914. The general levy of the total tax (Sec. 18, p.

**Annual Installment Tax.** 242, Laws 1913) thought to be necessary for the completion of the work was not made until September 30, 1914. The drainage tax book was thereafter made up as the same section requires. Subsequently (Sec. 19, p. 243, Laws 1913) the board levied an annual installment tax and certified this to the collector on November 5, 1914. The question on this branch of the case is whether, in the circumstances, this levy of an annual installment tax for 1914 can be enforced as a tax for that year, collectible in that year and delinquent December 31, 1914.

This system of organizing drainage districts had its origin in 1879. [Secs. 6207, et seq. R. S. 1879.] Un-

Drainage District v. Winkelmeyer.

der Section 6218, Revised Statutes 1879, it was provided that as soon as the district had been organized, the board of supervisors, in order to pay *all* expenses, including cost of survey, construction, maintenance and administration, might "order the assessment of a tax, not exceeding fifty cents on each acre of land in the district, . . . for each and every year, and until no further expenditure of money in that behalf shall be necessary." This tax was required to be certified to the clerk of the county court and by him extended on the general tax book like other taxes, and collected by the collector of the county. This section, except for the assessment, adopted the general taxing machinery in use under the general law. [State ex rel. v. Angert, 127 Mo. l. c. 463; Drainage Dist. v. Daudt, 74 Mo. App. l. c. 585.] Under this statute the taxes were extended and the tax book delivered to the collector within ninety days after the correction of the book, which was made immediately after the county board of appeals and the state board of equalization acted, usually in April. [Sec. 6671-6676, 6748, R. S. 1879.] It is clear the first assessment under Section 6218 could not go on the tax book unless it was certified to the county clerk prior to the time he was required to deliver that book to the collector. The conclusion must be that Section 6218 contemplated that the first fifty-cent-per-acre assessment was to be extended on the tax book which was made up and certified by the county clerk to the collector next after the assessment was made by the board of supervisors. Had Section 6218 been in force in 1914 there can be no doubt a levy after September 30th of that year, as in this case, would not have been collectible before the fall of 1915. There would have been nothing upon which to base an earlier collection. In other words, Section 6218 would not have empowered the board to make an assessment in October or November, 1914, which could have been the basis of a tax collectible in that year. Section 6218 remained unchanged until 1905. [Sec. 6528, R. S. 1889; Sec. 8262,

R. S. 1899.] Section 8263b (Laws .1905, p. 199), which amended Section 8262, Revised Statutes, 1899, provided that as soon as the decree confirming the report of the commissioners had been filed in the office of the county clerk, the board of supervisors should levy upon benefited lands a tax equal to the expense of organization and preliminary work and estimated cost of construction, administration, etc., and certify this levy to the county clerk, whose duty it became to record it. Section 8263b (Laws 1905,. p. 200) closed with that provision. Section 8263c began thus: "The said board of supervisors shall *annually thereafter* determine, order and levy the amount of the installment of the tax named in the next preceding section, which shall become due and be collected during said year at the same time that state and county taxes are due and collected, which annual installment shall be · evidenced and certified by the said board *not later than March 1st* of each year to the county clerk," etc. The form of the board's certificate is set out and contains the following: "The said installment of tax shall be collectible and payable the present year, at the same time state and county taxes are due and collected." The clerk was required to record the certificate in a drainage district book and to set out therein the names of owners, description of lands and amount of the installment, and to certify this as "true copies of the certificates of total and annual —————— drainage district installment tax for the year A. D. 190—and," etc. This certified record the clerk was required to deliver "each year to the collector" at the time the collector commenced the collection of state and county taxes. Thenceforward the act retained in force the provisions of the general revenue law concerning collection of taxes. Section 8263g provided that the tax was to become delinquent December 31st of the year for which said taxes were levied. The principal change made by this act, affecting the question in this case, is the omission of the requirement that the county clerk should extend the drainage tax on the

general tax book. For this it substituted the require-
ment that the clerk should make out a separate tax
book and extend the taxes thereon. It is apparent that
the Act of 1905 dealt with calendar years. It is cer-
tain it required the board to certify the tax to the
county clerk by March 1st, and required him to make
up the drainage tax book thereafter and by the time
the collector commenced the collection of state and
county taxes. The time for the extension of taxes by
the clerk was fixed definitely, as it had been under the
former law. The difference was merely in the book
upon which the extension was to be made. Under this
act a levy of an installment made in October by a dis-
trict which had not earlier reached a stage in organiza-
tion at which it could make such levy, could not have
been certified to the clerk until after the time the collec-
tor was required to begin his collections of state and
county taxes. Under that act, when a levy made in Octo-
ber or November was certified to the clerk "by March
1st" it would have been the clerk's duty to make up a
tax book for the calendar year following the levy. This
is clear from the provisions of the act which have been
quoted.

The acts of 1909 (Sec. 5519 et seq., R. S. 1909) and
of 1911 (Laws 1911, p. 213, et seq.) made no changes
which materially affect the question in this case.

Section eighteen of the Act of 1913 (Laws 1913, p.
242) requires that the board of supervisors, after the re-
cording of the decree of confirmation of the amended
commissioner's report, shall, without unnecessary delay,
levy a tax equal of such portion of the benefits assessed
as shall be necessary to pay the cost of construction
and ten per cent. The secretary of the board is then
required to make out a "drainage tax record." Sec-
tion 19 reads thus: "Section 19. The said board of
supervisors shall *each year thereafter* determine, order
and levy the amount of the annual installment of the
total taxes levied under the preceding section, which

shall become due and be collected during said year at the same time that state and county taxes are due and collected, which said annual installment and levy shall be evidenced and certified by the said board not later than September 1st of each year to the collector of revenue of each county in which lands and other property of said district are situate." A form of certificate is then set out. This certificate states that the tax cerified is "for the year 19—" and that "said taxes shall be collectible and payable the present year at the same time that state and county taxes are due and collected, and you are directed and ordered to demand and collect the said taxes at the same time you demand and collect the state and county taxes due on the same lands and other property," etc.

It is to be remembered the decree confirming the commissioner's report was rendered September 2, 1914, the levy of the total cost tax (Sec. 18), was made September 30, 1914, and the annual installment was levied after this was certified and recorded, and was certified to the collector November 5, 1914.

Appellant's contention is that this first annual installment was due and collectible in and for the year 1914. To maintain this position it contends that the words "each year thereafter" should be construed as if they read "thereafter each year."

In construing statutes it is the duty of this court, "unless such construction be plainly repugnant to the intent of the Legislature or of the context of the State statute," to construe words and phrases "in their plain, ordinary and usual sense." [Sec. 8057, R. S. 1909.] If the words, in their natural sense, as used, and "in order of grammatical arrangement" in which they are used, "embody a definite meaning, which involves no absurdity and no contradiction between the different parts of the same writing," that is the meaning it is our duty to ascribe to them. [State ex rel. v. Board of Curators, 268 Mo. l. c. 608, 609.] It is not contended the words "each year thereafter" do not

have a plain and usual meaning which involves no absurdity, nor is it contended that if such meaning is given them appellant's position can be maintained. The argument is that the proposed work would be delayed in some cases if the words were so employed; that the act is remedial, and the beginning of the work of improvement should not be thus postponed. The word "thereafter" in a connection like this ordinarily means "after that; afterward." "The time or period following an event or date." [Standard Dict.; Webster's International Dict.; Century Dict.; State v. Ryan, 120 Mo. 1. c. 93; State v. Murray, 237 Mo. 1. c. 168.] Used in its ordinary sense the word "thereafter" in Section 19 refers to "the time or period following an event or date" previously fixed in the same act. No such time or date is fixed in that part of Section 19 which precedes that word. It must refer to some time or date fixed in a previous section. Section 18 provides for the levy of the general tax covering the estimated total cost of the proposed work. This levy is a step necessarily precedent to the annual levies contemplated by Section 19. Likewise the apportionment of the general levy to the respective tracts in the district and the filing in the recorder's office, for lien purposes, of a certificate showing such apportionment    (Sec. 23) are things required to be done prior to the levy of the annual installment, as is clear from Sections 18, 19 and 23 and the forms set out therein.

The Legislature was at no loss for language to provide for the immediate collection of a tax when it desired it to be so collected. In Section 11 of the same act it had, as pointed out, provided that "the board of supervisors . .  .  .  shall, as soon as elected and qualified, levy a uniform tax of not more than fifty cents per acre," and "such tax shall be due and payable as soon as assessed, and if not paid by December 31st *of the year in which it has been levied,* the same shall become delinquent." This language is plainly effectual to accomplish, with respect to the acreage tax under

Section 11, exactly what appellant argues was intended, with respect to the first annual installment tax, under the quite different language of Section 19. The natural import of the words in Section 19 is different from that of the words quoted from Section 11. It would be a little remarkable if the Legislature could be held to have intended to express the same thing by two formulas so divergent in their usual and natural meaning. There is nothing in the act which can be construed to conflict with the natural interpretation of the words "each year thereafter." The danger of delay apprehended by appellant is obviated by a provision empowering the board to issue bonds (Sec. 42, p. 256, Laws 1913) and thus anticipate its revenue and provide at once a fund for the work of construction. The acreage tax (Sec. 11) provides for the preliminary expenses. Section 19 grew by amendment gradually out of Section 6218, Revised Statutes 1879. All along its course it carried the meaning which the usual and ordinary sense of the words "each year thereafter" gives to Section 19.

This is not a case in which an official has neglected to comply with some regulation designed to secure order, system and dispatch in proceedings for the assessment and enforcement of taxes (State ex rel. v. Phillips, 137 Mo. 259), but is one in which the question is whether the board had the *power* to impose an installment tax for a particular year.

When the words in Section 19 are construed as the statute (Sec. 8057) requires, no obstacle to such construction appearing in this case, it is clear the board had no power to make a levy collectible in 1914. The delay was not due to the dereliction of any official concerned in the matter, but arose from the absence of statutory authority to make the levy. As already pointed out, the Legislature has provided means whereby the district board may avoid any consequent delay in the work of the improvement. This count stated no cause of action.

III.   Because of the error pointed out in Paragraph I, the judgment is reversed and the cause remanded. All concur; *Bond, J.,* in the result.