### UNITED STATES v. CERTAIN LAND SITUATE IN CITY OF ST. LOUIS, MO., et al.

#### No. 4242.

United States District Court
E. D. Missouri, E. D.
Sept. 26, 1949.

298

Drake Watson, U. S. Atty. and C. J. Hughes, Sp. Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

R. D. Shewmaker (of Thompson, Mitchell, Thompson & Young), St. Louis, Mo., for Mercantile-Commerce Bank & Trust Co.

Alfred L. Gratendick, St. Louis, Mo., for Collector of Revenue, City of St. Louis, Mo.

George L. Stemmler and Charles J. Dolan, St. Louis, Mo., for City of St. Louis, Mo.

HARPER, District Judge.

The defendant, the Collector of Revenue of the City of St. Louis, Missouri, seeks to collect the state, schools and city taxes for the year 1946, out of the money paid into the registry of this court by the United States of America for the appropriation of lands located in the City of St. Louis.

The facts disclose that the United States of America commenced an action in this court to acquire by condemnation the fee-simple title to certain real property located within the city limits of St. Louis, Missouri. A declaration of taking by the United States of America was filed on January 16, 1946, and the sum of $500,000.00 was paid into the registry of this court, being the estimated value of the land and improvements thereon, and on the same day the court entered judgment. The real estate was owned by the defendant, Mercantile-Commerce Bank and Trust Company, at the time of the taking.

On May 29, 1946, within the time permitted by order of the court, the defendant, Collector of Revenue of the City of St. Louis, Missouri, filed his claim with the court for state, school and city taxes for the year 1946, stating that the amount of said taxes would be determined at a later date.

On June 3, 1946, upon the application of the defendant, Mercantile-Commerce Bank and Trust Company, the court ordered paid to it out of the amount deposited in the registry of the court the sum of $475,000.00, leaving in the registry of the court the sum of $25,000.00.

On October 8, 1948, the defendant, City of St. Louis, Missouri, filed an amended intervening petition setting out a definite figure for the city taxes, and on October 12, 1948, a stipulation was filed setting out the amount of taxes in detail due the state, schools and city.

On January 16, 1946, the date of the taking of the property by the United States, the assessed valuation placed on the property for the tax year 1946 had not been completed and the tax rate had not been established by either the schools or the city of St. Louis, Missouri, although the tax rate for state purposes had previously been fixed by statute.

To dispose of this case it is necessary to determine: When did the lien for state,

school and city taxes commence for taxes due and payable in 1946, and can these taxes, if owed, be apportioned? The defendants, Collector of Revenue of the City of St. Louis, Missouri, and the City of St. Louis, Missouri, contend that the tax lien commenced on January 1, 1946, and therefore, the 1946 taxes are due and payable. The defendant, Mercantile-Commerce Bank and Trust Company, contends that the tax lien did not commence until the amount of the tax was determined by the annual assessment and levy, which was after January 16, 1946, so there was no tax due for 1946, since the United States of America, a tax exempt owner, held title when the tax lien commenced.

■ Under the decision of the Supreme Court in the case of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the law of Missouri governs in this case.

In February of 1945 a new Constitution, Mo.R.S.A.Const.1945, was passed for Missouri and following its passage the legislature proceeded to pass enabling statutes putting into law the new Constitution. Secs. 4 and 7, pp. 1800–1801, Mo.R.S.A. §§ 10942.3, 10942.6, and Sec. 7, p. 1861, Mo.R.S.A. § 11000.107, passed by the legislature in December of 1945, are the enabling statutes dealing with state, schools and city of St. Louis taxes. The question of when the tax lien for these taxes commences must be based upon these statutes. Since 1945 there have been no Missouri appellate decisions interpreting these statutes, so it is necessary to turn to the statutes themselves and the Missouri appellate court decisions dealing with prior tax statutes to determine when the tax lien commences.

Sec. 4, p. 1800, Laws of Missouri 1945, provides: "Every person owning or holding real property or tangible personal property on the first day of January including all such property purchased on that day, shall be liable for taxes thereon during the same calendar year." The Missouri appellate courts have held that this does not permit the recovery of a personal judgment against the taxpayer for taxes against his land, but that taxes on real property shall

be collected by a suit to enforce the tax lien against the land. State ex rel. Hayes v. Snyder, 139 Mo. 549, 41 S.W. 216.

The Eighth Circuit Court of Appeals, in the case of Collector of Revenue within and for the City of St. Louis, Missouri v. Ford Motor Company, 8 Cir., 158 F.2d 354, loc. cit. 355, stated: "When the United States appropriated the land in question under the power of eminent domain, the lien for taxes could not thereafter be specifically enforced against the property taken, but the effect of the condemnation proceeding was to transfer the lien from the land to the award in the registry of the court." In other words, under the Missouri decisions land is liable for the taxes, but under the facts in this case, where the United States has condemned the property, the tax lien in this particular instance, if such a tax lien existed for the year 1946, has been transferred from the land to the award in the registry of the Court.

Sec. 7, pp. 1800–1801, Laws of Missouri for 1945, provides as follows: "Section 7. Property becomes taxable—conditions.— Government lands entered or located on prior to the first day of January shall be taxable for that year and every year thereafter; school and swamp land and lots shall become taxable whenever the county sells, conveys or agrees to convey its title; real property shall in all cases be liable for the taxes thereon, and a lien is hereby vested in favor of the state in all real property for all taxes thereon, *which lien shall accrue and become a fixed encumbrance as soon as the amount of the taxes is determined by assessment and levy,* and said lien shall be enforced as hereafter provided in this chapter; said lien shall continue to be enforced until all taxes, forfeitures, back taxes and costs shall be fully paid or the land sold or released as provided in this chapter."

To be considered also is Sec. 7, p. 1861, Laws of Missouri for 1945, which reads as follows: "Section 7. Date of beginning and completing assessment.—The assessor, or his deputies under his direction, shall severally assess all the taxable real and tangible personal property within the city

in the manner provided in this Act and as otherwise provided by law, and for that purpose the assessor may divide and assign the work or any of it among them. They shall commence their assessment on the 1st day of January in each year, and complete the same, and the deputies make their final reports thereof to the assessor, on or before the 1st day of April next following. The assessor shall see that the assessment is made uniform and equal throughout the city; provided, that if said assessor proposes to increase any assessment of real property, he shall give notice of the fact to the person owning the property affected, his agent or representative, by personal notice, or by mail directed to the last known address."

Prior to the Laws of 1945, the dates in the sections similar to Sections 4, p. 1800, and 7, p. 1861, were June 1st of the prior year (see R.S.Mo.1939, Secs. 10940 and 10970, Mo.R.S.A.), rather than January 1st of the current year. Except for the change in the dates, these two sections are virtually the same as the statutes of 1939. A part of Article 10, Sec. 3 of the new Constitution, which reads as follows: "All taxes shall be levied and collected by general laws and shall be payable during the fiscal or calendar year in which the property is assessed", required that the 1939 laws be changed because the property under the 1939 laws was assessed on June 1st for the ensuing year. This change of date in the two new sections is of no significance in the case at bar, since the date adopted by the legislature, January 1, like June 1 of the preceding year, was prior to January 16, the date of the taking of the property by the United States of America.

The Missouri courts have held that under the 1939 statutes the state had a lien for taxes from June 1st of any year for the taxes due the following year. The Supreme Court in the case of St. Louis Provident Association v. Gruner, 355 Mo. 1030, 199 S.W.2d 409, loc. cit. 411 said: "Our conclusion is that the state had at least an inchoate lien from June 1, 1943 for taxes due on this land in 1944 which became fixed in amount by relation back to that date after the assessment and levy was completed." The St. Louis Provident Association decision follows a long line of decisions in Missouri to the same effect based upon the tax statutes prior thereto. Judge Ridge of the Western District of Missouri, in the case of United States v. Certain Lands in Jackson County, Missouri, D.C., 69 F.Supp. 565, decided at about the same time as the St. Louis Provident Association case, supra, is to the same effect. There is no question but that prior to the passage of the Missouri laws of 1945 that under the facts in the case at bar the Collector of Revenue would be entitled to collect the taxes for state, school and city purposes for the year 1946.

Sec. 7, pp. 1800-1801 of the Laws of 1945, differs from the laws in effect prior to the passage of that section, in that it contains a clause that was not in prior statutes, and which clause is italicized by this court in the quoted section above. The added clause reads as follows: "which lien shall accrue and become a fixed encumbrance as soon as the amount of the taxes is determined by assessment and levy." The question here is whether or not the addition of this clause to the section changes the date on which the tax lien commenced for real property taxes from January 1, 1946, to a later date, a date at which time the taxes have been determined by assessment and levy, which date it is admitted in this case had not occurred prior to January 16, 1946, the date of the taking by the United States of America.

To determine this issue we must turn to the Missouri decisions dealing with liens on real property for tax purposes. One of the most cited cases, decided by the Supreme Court of Missouri in 1864, is the case of Blossom v. Van Court, 34 Mo. 390, 86 Am.Dec. 114. The court, 34 Mo. at page 394 of that opinion, said: "The section above quoted appears to fix definitely that the tax should be assessed against the person who was on the first day of February the owner of the property, thus fixing his liability on that day, and charging the property with it as an

encumbrance, (although the amount of the encumbrance is not ascertained until afterwards)." The section referred to by the court was a section comparable to Secs. 4, p. 1800, and 7, p. 1861, of the 1945 Missouri Laws (the assessment sections). The Supreme Court in 1869, in the case of McLaren v. Sheble, 45 Mo. 130, loc. cit. 131, said: "No actual assessment of the property for the year 1866 had been made at the date of the sale and transfer. The assessment, however, was subsequently made in accordance with the statute in the name of the defendant, as being the owner on the first Monday of September of that year. Did the lien of the tax imposed by virtue of the assessment take effect by relation from that date? That is the only question presented for consideration, and it is substantially determined by the decision in Blossom v. Van Court, 34 Mo. 390, 86 Am.Dec. 114. The circumstantial differences between the two cases do not affect the principle involved. That case decides in effect that the tax lien does relate back to and take effect from the inception point of the assessment, although the assessment may not be consummated till a later day or month in the year. The language of the court on this point is clear and explicit."

Judge Faris, while a member of the Supreme Court of Missouri, in Morey Engineering & Construction Co. v. St. Louis Artificial Ice Rink Co., 242 Mo. 241, 146 S.W. 1142, at page 1143, 40 L.R.A., N.S., 119, Ann.Cas.1913C, 1200, referring to the Van Court and McLaren cases, supra, said: "Both cases hold that the lien of the tax takes effect from the initial point of the assessment, and by virtue of the assessment." And, 146 S.W. at page 1144, after reviewing the history of tax liens in Missouri, further said: "It will be perceived from the foregoing review of the cases that, under all the varying revenue laws of the state, this court has held that real estate taxes constitute ex proprio vigore a prior lien against the property on which they are assessed, not depending upon any expressed declaration of the statute to that effect, and not depending, as it is now claimed they do, upon the

provision in the statute first enacted in April, 1877 (Acts 1877, p. 387), which gives the judgment for taxes a first lien."

The decisions referred to above, and the subsequent Missouri decisions, have based the tax lien upon the assessment statute rather than the lien statutes. If the legislature of 1945 had not passed assessment statutes and we were construing only Sec. 7, pp. 1800–1801, of the 1945 Laws, the reasonable interpretation might well be that the lien did not commence until the assessments had been completed and the tax levied, but since the legislature did pass assessment statutes, it is necessary to construe Sec. 7, pp. 1800–1801, of the 1945 Laws (the tax lien statute) in conjunction with Secs. 4, p. 1800, and 7, p. 1861, of the 1945 Laws (the assessment statutes). Sec. 4 makes every person who owned property on January 1st liable for the taxes for the current year, and Sec. 7, p. 1861, provides assessments shall commence in St. Louis on January 1st. While the courts have uniformly held that the real property tax must be collected from the property rather than the individual, yet to hold that the clause added to Sec. 7, pp. 1800–1801 of the 1945 Laws, which differs from the prior laws, changed the tax lien date from January 1st to a later date, is to completely destroy the meaning of Secs. 4, p. 1800, and 7, p. 1861 (tax assessment statutes). It has been the assessment statutes that the Missouri courts have consistently held created the tax lien, and not the statutes specifically mentioning the tax lien which created it. The legislature in recent years, evidently seeking to clarify the tax lien question, adopted a tax lien statute, similar to Sec. 7, pp. 1800–1801, of the 1945 Laws, except for the added clause mentioned. But unmindful of the tax lien statute the courts thereafter consistently held that the tax lien is based upon the assessment statutes rather than the tax lien statutes. Morey Engineering and Construction Company, supra.

Further, when we consider the language of the clause itself, which is a part of Sec. 7, pp. 1800–1801, which differs from the previous statutes, we find that it has

in itself two possible meanings. The words that we must interpret to determine its true meaning are "accrue" and "fixed encumbrance." The word "accrue" has been defined by the court in O'Brien v. Sturges, D.C., 39 F.2d 950, loc. cit. 954, as follows: "The word 'accrue' as used in law has two meanings: It is often applied to a present enforceable demand, and as often, if not more often means simply to arise or to come into existence." The same definition is set out in Vol. 1 C.J.S., page 759, where in referring to the meaning of the word "accrue" it is further stated: "The meaning of the word is dependent somewhat on the facts of each case and the objects to be accomplished either by the statute or contract in which the word is used." From the definition of the word "accrue" the legislature could have used it as referring to a lien that was in existence or as referring to one that had just come into existence. In view of the Missouri court decisions, dealing with tax liens on real property in which they have based the lien upon the assessment statutes, it is believed that the word "accrue" as used in Sec. 7, pages 1800–1801, of the Missouri Laws for 1945, means that the lien was in existence, being a present enforceable demand from January 1st and prior to the determination of the taxes by assessment and levy. This use of the word rather than its use as meaning to arise or come into existence is further borne out by the fact that the word "accrue" is followed in the clause added to Sec. 7, pp. 1800–1801 of the 1945 Laws by the words "and become a fixed encumbrance." Had the word "fixed" been omitted, some consideration might be given to the fact that the legislature meant for the encumbrance to come into existence when the tax is determined by assessment and levy, but the word "fixed" has a meaning which would indicate that the encumbrance was in existence prior to that time.

The Court in the case of National Candy Company v. Miller, 8 Cir., 160 F. 51, loc. cit. 56, said: "The word 'fixed,' as ordinarily used, and as defined primarily by the dictionary, means 'securely placed, or fastened; settled, immovable; unalterable.'" Does not the definition "settled" best apply in this instance?

In the case of Helvering v. McGlue's Estate, 4 Cir., 119 F.2d 167, loc. cit. 170, the court said: "Under Section 42 [26 U.S.C.A.], respondent's claim was 'fixed', rather than 'inchoate' or 'in the process of becoming.'"

Prior to the new statutes some of the Missouri courts have described the tax lien which was in existence from the assessment date until the amount of the tax was definitely determinable by assessment and levy as being an inchoate lien. It is believed the legislature used "fixed" prior to "encumbrance" in the new statute, as in the Helvering case above, meaning the opposite of "inchoate", and as indicating that an inchoate lien or encumbrance existed prior to the time that the amount of the taxes was definitely determinable by assessment and levy. When we consider the Missouri decisions dealing with tax liens; the definitions of the words "accrue" and "fixed"; together with Secs. 4 and 7, pp. 1800–1801, and 7, p. 1861, of the Missouri Laws of 1945, emphasis is added to the belief that the legislature meant by the new sections that an inchoate lien for taxes commenced on January 1, 1946, for 1946 taxes, and that said lien was a present enforceable demand which, under the new clause, became a fixed or settled lien in amount when the assessment and levies were determined.

It is of interest that the clause added to the lien section in 1945 may have been taken from the case of McAnally v. Little River Drainage District, 325 Mo. 348, 28 S.W.2d 650, loc. cit. 651, wherein Judge Gantt said: "The lien of the state for taxes is established by an assessment of all land for that purpose. Section 12757 [Mo.R.S.A. § 10941]. However, said lien does not accrue and become a fixed encumbrance until the amount of the tax is determined by an annual assessment of the land and annual levy of the tax." The statement by the court was dictum, in a drainage district case where the tax lien problem is quite different from the problem here, since it is based on drainage law

rather than the law we have cited. It should be noted in this connection, however, that prior to the McAnally case, supra, that the same judge who wrote the opinion in the McAnally case, also wrote the opinion in the case of State ex rel. and to Use of Waddell v. Johnson, 316 Mo. 21, 296 S.W. 806, loc. cit. 808, in which he said: "The taxes in question became due and payable in 1920 and 1921, based on assessments of 1919 and 1920, and became a lien in favor of the state upon the land of appellants as of the 1st day of June, 1919 and 1920. Sections 12756 and 12757, R.S. [Mo.] 1919 [Mo. R.S.A. §§ 10940, 10941]."

The defendant, the Mercantile-Commerce Bank and Trust Company, contends that the McAnally case is authority for the fact that when the clause was added to Sec. 7, pp. 1800–1801, that it had the effect of changing the date the tax lien commenced from January 1st to the date the assessments and levies were completed. With this contention the court cannot agree. In the first place, Judge Gantt in the McAnally decision did not even indicate in the slightest that he was undertaking to overrule a long list of decisions in Missouri holding that the tax lien was based upon the assessment statutes, which decisions he had followed in the Waddell case. And secondly, and probably much more important, is the wording of the McAnally decision. The sentence immediately preceding the clause that has been inserted in Sec. 7, pp. 1800–1801 of the 1945 Laws quoted above is as follows: "The lien of the state for taxes is established by an assessment of all lands for that purpose," indicating that Justice Gantt recognized the long prevailing rule in Missouri that tax liens commenced with assessments and were based upon assessments. He did use the clause that has been set into the section which has brought about the dispute, but he paraphrased it with the use of the word "however." This court believes that Judge Gantt in the McAnally case was expressing the fact that a fixed lien or encumbrance came into existence when the amount of the tax was determined by annual assessment and levy, as opposed to an inchoate lien, which he indicated existed, when he said that "The lien of the state for taxes is established by an assessment * * *." This court does not feel that the defendant, Mercantile-Commerce Bank and Trust Company, can gain any solace from the McAnally opinion when considered as a whole.

It is, therefore, held that the state had at least an inchoate lien from January 1, 1946, for taxes due on this land in 1946, which became fixed in amount by relation back to that date after the assessment and levy was completed, and in view of the facts in this case is a lien upon the award in the registry of this court.

With respect to the second problem, when the lien for the tax attached on January 1, 1946, the courts have held there could not thereafter be any proration of the taxes. St. Louis Provident Association v. Gruner, supra, and Collector of Revenue within and for the City of St. Louis, Missouri v. Ford Motor Company, supra.

Accordingly, the motion of defendant, Mercantile-Commerce Bank and Trust Company, to strike amended intervening petition of defendant, City of St. Louis, Missouri, is overruled, and the prayer of the amended intervening petition of defendant, the City of St. Louis, and the intervening petition of defendant, Collector of the City of St. Louis, Missouri, will be granted. Attorneys for the defendants, City of St. Louis, Missouri, and Collector of the City of St. Louis, Missouri, will submit findings of fact, conclusions of law and judgment for approval, signature and entry.